# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| ANTHONY DOBBINS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 3:05-CV-78 |
| | )    (Shirley) |
| TENNESSEE VALLEY AUTHORITY, | ) |
| WILLIAM B. SANSOM, BILL BAXTER, | ) |
| DENNIS BOTTORFF, DON DePRIEST, | ) |
| ROBERT M. DUNCAN, SKILA HARRIS, | ) |
| HOWARD THRAILKILL, and | ) |
| SUSAN RICHARDSON WILLIAMS, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the

Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings,

including entry of judgment. [Doc. 52]. On February 12, 2007, the parties appeared before the

Court for a motion hearing on Defendants'[1] Motion for Partial[2] Summary Judgment [Doc. 35].[3]

---

[1]Defendants include the Tennessee Valley Authority and individuals, who are collectively represented by the same counsel. The Tennessee Valley Authority ("TVA") is the lead defendant, and defendants will be collectively referred to as "Defendants."

[2]Though styled as a motion for summary judgment, at the hearing, Defendants conceded that it is actually a motion for partial summary judgment.

[3]The instant motion for summary judgment is actually a renewed motion for summary judgment. [Doc. 34]. Between the filing of the original motion for summary judgment, its withdrawal, and its renewal, the plaintiff was permitted to add defendants, the TVA board members, who are deemed to be the proper parties. Since defense counsel simply renewed its motion without changing the content, the renewed motion for summary judgment technically states that only one defendant is moving for summary judgment. Since the "defendants" are actually moving for relief, the Court, as a matter of convenience, will refer to "defendants," instead of "defendant," as the movants.

Attorney John Slater appeared on behalf of Defendants. Attorney Linda G. Welch appeared representing Plaintiff Anthony Dobbins ("Dobbins"), who was also present.

I.    **BACKGROUND**

This is an action based on alleged racial discrimination and reprisal under Title VII of the Civil Rights Act of 1964, 42 United States Code Section 2000e-16, as well as state law claims under the Tennessee Human Rights Act, brought pursuant to 28 United States Code Section 1367. [Doc. 31]. Jurisdiction in this Court is proper under 28 United States Code Section 1331.

Dobbins is an African-American, who has worked at TVA since 1977. [See Docs. 7, 31]. Since 1995, he was employed as a General Building Mechanic ("GBM"), which is a position within Facilities Management. Dobbins never received a negative performance review. Dobbins has a history of filing Equal Employment Opportunity ("EEO") complaints against TVA. Some of the complaints have been adjudicated in his favor; some have not.

In 1997, Dobbins was placed on the night shift. In 1999, Dobbins informally expressed his desire to be transferred to a day shift position and cited some grievances, including not being considered for GBM Foreman. In December, 2001, Dobbins requested to be put on day shift. Other individuals were placed on the day shift instead of Dobbins for reasons which are under dispute. On April 6, 2002, Dobbins filed a formal Employment Opportunity ("EO") complaint alleging that, from January 2002 and onward, he was subjected to race discrimination and reprisal when he was not transferred to a day shift GBM position. On August 26, 2002, Dobbins was transferred to the Knoxville Outside Crew, the "Field Crew," on the day shift. He was placed under the supervision of James Miller ("Miller").

Dobbins claims that as of January 3, 2000, he was qualified to serve as a Dual Rate Foreman, a position akin to, though not synonymous with GBM Foreman, in TVA's Human Resource System.[4] Defendants contest this claim. Dobbins further claimed that at times he has served as a Dual Rate Foreman. This position pays more money than a GBM position. According to Dobbins, TVA's custom is to have a Dual Rate Foreman trained in a technical craft which varies from that of the foreman. In August of 2002, Dobbins learned that the Dual Rate Foreman position was vacant. In September, 2002, Dobbins informed Miller that he would like to be considered for the vacant position. Later in that same month, Miller informed Dobbins that Steve Turpin ("Turpin") had been assigned as the new Dual Rate Foreman. Turpin is skilled in the same trade Miller, the foreman, is – electricity, whereas Dobbins is a steamfitter/boilermaker. On October 17, 2002, Dobbins filed an informal EO complaint alleging that he was subjected to race discrimination and reprisal when he was not selected for the Dual Rate Foreman position. He later filed a formal EEO Complaint, and the Equal Employment Opportunity Commission ("EEOC") granted summary judgment to TVA, finding that Plaintiff had not been subject to racial discrimination.

Towards the end of 2002, TVA restructured and divided its trades and labor force into three classifications: Property Maintenance Worker, Level 1; General Maintenance Worker, Level II; and Facilities Maintenance Technician, Level III ("FMT-III"). These positions did the same work as the previous GBM classification but were paid slightly more. TVA required GBMs who wished to fill these positions to take a skills test. Dobbins claims that he did well on the skills test and asked to be a FMT-III. Although all FMT-III positions were filled with former GBMs, Dobbins

---

[4]It appears to the Court that GBM Foreman is a solely foreman position. A Dual Rate Foreman position, however, allows for the GBM to be paid under two pay-scales: one for time spent as a foreman and the other for time spent as a standard GBM.

did not receive a FMT-III position. He claims former GBMs with less seniority and poorer skills test scores were awarded the positions instead of him.[5]

On June 29, 2004, Plaintiff filed a formal EEO Complaint alleging that in March of 2004 he was not selected for a FMT-III position because of race discrimination. Defendant TVA later denied that complaint, citing internal rules allowing a forty-five day window within which to file a complaint. In response, Plaintiff asserted that he had recently learned that the selectee failed a test that Plaintiff had passed. Defendant TVA accepted Plaintiff's rationale and waived the forty-five day time limit. The administrative proceeding involving this complaint was ultimately dismissed because of the current litigation.

In June of 2004, Plaintiff was subjected to a reduction in force ("RIF"). He challenged this action through the proper administrative processes, which included a hearing before the Merit Systems Protection Board ("MSPB"). Before the MSPB, Dobbins, represented by counsel, argued that the application of the RIF was inappropriate to GBMs based on a memorandum of understanding ("MOU") existing between Defendant TVA and a union in which Dobbins was a member. The MSPB Administrative Law Judge ("ALJ") determined the RIF was appropriate, even when considering the MOU. Additionally, the ALJ determined that Plaintiff's sole challenge had been the applicability of the RIF to GBMs and had not alleged racial discrimination. The ALJ's decision in favor of Defendant TVA was accompanied by a notice stating that the decision would be final as of December 21, 2004, unless appealed to the MSPB or directly to the United Court of Appeals for the Federal Circuit.

---

[5]Though copious documentation was submitted regarding this issue, Plaintiff's non-selection for a FMT-III position in 2003 is not addressed in Defendants' motion for summary judgment. Accordingly, it is not presently pending before this Court and further elaboration of these facts is unnecessary at this time.

On February 4, 2005, Plaintiff file a Complaint [Doc. 1] in this Court, asserting that Defendant TVA had committed race discrimination and retaliation against him on numerous occasions. The facts stated above are at the core of his complaint.

## II.     Procedural History

Defendants moved for partial summary judgment [Doc. 35] against Plaintiff on October 27, 2006. On November 22, 2006, Dobbins responded [Doc. 40] in opposition to Defendants' motion. On December 8, 2006, Defendants filed their reply [Doc. 48]. The parties argued their pleadings on February 12, 2007. On February 14 and 15, 2007, both parties filed post-hearing documents [Docs. 54-56], which will be considered in this Court's ruling on Defendants' motion for partial summary judgment [Doc. 58]. Accordingly, this matter is now ripe for adjudication.

### A.     Defendants' Motion for Summary Judgment

Defendants move for summary judgment as to the following claims: (1) Plaintiff's non-selection as a Dual Rate Foreman; (2) Plaintiff's non-selection as a FMT-III in March of 2004; (3) Plaintiff's subjection to a RIF in June of 2004; (4) Plaintiff's request for compensatory damages and a jury trial; and (5) Plaintiff's state law causes of action under the Tennessee Human Rights Act. [Doc. 35]. Additionally, Defendants argue that Plaintiff failed to name and sue the proper parties in his original Complaint. As to the Dual Rate Foreman issue, Defendants argue that Plaintiff did not appeal to an United States District Court within ninety days of the issuance of TVA EEO's final agency decision, therefore this claim has not been timely brought.

As to Plaintiff's March 2004 non-selection to a FMT-III position, Defendants argue the claim was not brought timely because it was filed ninety-one days after the action, well-outside the forty-five day time period allowed. Defendants further argue that, though TVA granted Plaintiff additional time to file his complaint, the extension was granted due to Plaintiff's false assertion that he had recently learned that the selectee did poorly on a skills test required for the job. Additionally, Defendants claim that Plaintiff never exhausted the administrative process, barring this claim.

As to the Plaintiff's June 2004 RIF, Defendants argue that actions based on a RIF are directly appealable to the MSPB. Plaintiff brought a claim involving the RIF to the MSPB, and the MSPB ruled in favor of TVA, finding that Plaintiff was correctly reduced in force. To appeal a decision of the MSPB, Defendants argue that Plaintiff must go to the United States Court of Appeals, Federal Circuit, and not a local United States District Court. Therefore, Defendants argue this Court lacks subject matter jurisdiction. Additionally, Defendants claims that Plaintiff never filed a formal administrative complaint alleging discrimination by the RIF. Thus, Plaintiff never exhausted the administrative process, which would bar his claims.

As to whether Plaintiff is entitled to compensatory damages, Defendants ague that he is not because he failed to allege compensatory damages in any of the administrative proceedings. Because he did not exhaust the administrative process, the claim is barred. Moreover, Defendants argue that Plaintiff has not alleged that he suffered an injury which would support a claim for compensatory damages, and Plaintiff has failed to offer any exhibits on this issue. As to Plaintiff's right to a jury trial, Defendants claim his right to a jury trial is contingent upon his compensatory damages claim. If Dobbins does not have a compensatory damages claim, then he has no right to a jury trial. [See Doc. 14 ].

**B.       Plaintiff's Opposition to Defendants' Motion for Summary Judgment**

Plaintiff replied by filing a memorandum in opposition to Defendants' motion for summary judgment.  [Doc. 40].  Plaintiff correctly notes that Defendants' motion is actually a motion for partial summary judgment because the motion does not address Plaintiff's FMT-III non-selection in 2003.  Plaintiff also withdrew his claims arising out of his non-selection to a dual rate foreman position and his claims under the Tennessee Human Rights Act.

As to the his non-selection in March 2004 to a FMT-III position, Plaintiff claims he passed the written test, whereas the selectee did not.  Plaintiff agrees that he was given an extension of time in which to file his initial EEO complaint on this matter.  Unlike Defendants, however, Plaintiff claims that he did not fabricate the occurrence of a test to garner an extension.  Instead, he asserts that he was referring to the written tests performed in 2003.  As to the RIF in June 2004, Plaintiff relies on the MOU, asserting that he was inappropriately subjected to a RIF.

As to compensatory damages, Plaintiff claims that TVA's Equal Employment Opportunity ("EEO") form does not solicit information regarding compensatory damages and that nobody questioned him about whether he had those damages.  Additionally, Plaintiff notes that in his initial complaint [Doc. 1], he specifically requested compensatory damages.  Plaintiff claims the EEO form and TVA should have investigated whether he had a compensatory damages claim. Regarding the right to a jury trial, Plaintiff appears to tacitly agree that the right to a jury trial is intertwined with compensatory damages; either a Plaintiff has claimed compensatory damages and has a right to a jury trial, or he has not claimed compensatory damages and he has no right to a jury trial.

As to whether Plaintiff exhausted his administrative remedies regarding the June 2004 RIF and his March 2004 FMT-III non-selection, Plaintiff asserts that the MOU is a contract, and Plaintiff is a third party beneficiary of that contract. Plaintiff then argues that the RIF constituted a breach of that contract. Additionally, Plaintiff asserts that the RIF was the "fruit of the poisonous tree" of the discrimination which resulted in Plaintiff's non-selection for a FMT-III position.

### C. Defendants' Reply to Plaintiff's Response

Defendants's replied [Doc. 48] by generally reiterating their earlier arguments, but also noting that Plaintiff has since named the correct parties as defendants, mooting Defendants' earlier argument premised on improper parties. Defendants then asserted that Plaintiff withdrew two issues in his response: the claim premised on Dobbins's non-selection to a Dual Rate Foreman position and his state law claims founded on the Tennessee Human Rights Act. Additionally, Defendants assert that Plaintiff admitted no test was required in March 2004 to attain a FMT-III position. Defendants contend that this renders Plaintiff's late-filed EEO complaint invalid. As to the RIF issue, Defendants assert that Plaintiff's claim presented to the MSPB only complained of whether the RIF was proper and did not allege that race or reprisal were involved in his selection for the RIF. Accordingly, Defendant urges the Court to find these claims barred by failing to exhaust the administrative process.

### D. Arguments Presented at the Hearing

At the hearing, the parties largely reiterated the arguments submitted in their pleadings. A brief summary of their arguments follows.

Defendants admitted that their motion was a partial motion for summary judgment, as whether Defendants discriminated against Plaintiff in his non-selection for the FMT-III position in January of 2003 is not addressed in the motion for summary judgment.

As to the Plaintiff's non-selection in March 2004 to a FMT-III position, Defendants argue it was time-barred by the forty-five day administrative time limit. Plaintiff responded that it was not time barred because Defendants granted Plaintiff an extension.

As to Plaintiff's appeal of the MSPB to this Court, Defendants aver that Plaintiff is not in the proper court. They argue that the United States Court of Appeals for the Federal Circuit has proper jurisdiction of any MSPB appeal. Plaintiff argues that a United States District Court is the proper court because Plaintiff raised discrimination issues to the MSPB. In response, Defendants argued that it was not a "mixed case" appeal because Plaintiff only asserted that the RIF regulations were improperly applied to him, not that he had suffered racial discrimination. Upon questioning by the Court, Plaintiff's counsel admitted that it would be difficult to find written evidence of Plaintiff submitting a race discrimination claim to the MSPB. Plaintiff further argued that Defendants had an affirmative duty to inquire as to whether a race discrimination claim existed. The Court directed Plaintiff to submit to the Court any evidence of Plaintiff asserting a race discrimination issue to the MSPB.

As to Plaintiff's claim for compensatory damages, Defendants argue that compensatory damages were never raised in the administrative process; therefore, Plaintiff has both failed to exhaust his administrative remedies and to prove that he has suffered any actual injury. Additionally, without a compensatory damages claim, Plaintiff is not entitled to a jury trial. Plaintiff admits the issue was not explicitly raised at the administrative level but avers that Defendants were

under a duty to ascertain whether Plaintiff was entitled to compensatory damages. Because Plaintiff claims compensatory damages, Plaintiff asserts he is entitled to a jury trial.

Additionally, Plaintiff frequently argued that a MOU between Defendant TVA and Plaintiff's union was breached. Whether a breach actually occurred is not presently pending before this Court because this exact claim was not asserted in Plaintiff's Complaint [Doc. 1] or Amended Complaints [Docs. 5, 31]. As such, this issue, on its own merit is not presently pending before this Court. As noted above, however, this issue is interwoven with Plaintiff's June 2004 RIF claim. Plaintiff continued to assert that the June 2004 RIF breached the MOU, resulting in an improper RIF as to Plaintiff.

Throughout the hearing, the Court requested that certain documents be submitted for its review. Additionally, at the conclusion of the hearing, Defendants requested that the record be open so that they could submit further filings regarding the pending motion for partial summary judgment. The Court granted Defendants and Plaintiff leave to file such documents.

E.    **Post-Hearing Documents**

The Court requested that both parties submit additional documentation at the conclusion of the hearing. Both Defendants and Plaintiff complied and filed the requested documents, as well as further supplemental documentation, with the Court. [Docs. 54, 56]. The vast majority of the documents submitted involved the MOU and its implications on the RIF, the selection process utilized in the two instances when Plaintiff was not selected for a FMT-III position, and the proceedings before the MSPB. Additionally, Plaintiff, for the first time, presented the Court with affidavits, signed by other employees of TVA, which indicate what could be construed as

discriminatory conduct or racist commentary.  [See Docs. 56-8, 56-12, 56-13].  Plaintiff also submitted new arguments regarding how Defendants discriminated against Plaintiff.[6]

## II.    ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The burden of establishing that there is no genuine issue of material fact lies upon the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In considering a motion for summary judgment, the Court must take all of the evidence submitted by the non-moving party as true, and must draw all reasonable inference in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor.  Id. at 248.  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

[6]These new arguments were asserted, for the first time, in Plaintiff's post-summary judgment hearing briefs. They have not been asserted in any Complaint [Docs. 1, 5, 31], therefore these matters are not presently pending before this Court and are not capable of disposal on summary judgment.

trial." <u>Celotex</u>, 477 U.S. at 322. In reviewing the evidence, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52; <u>see also</u> <u>Gaines v. Runyon</u>, 107 F.3d 1171, 1174-75 (6th Cir. 1997) (requiring the non-moving party "to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial" in order to defeat summary judgment).

Defendants have moved for summary judgment, alleging Plaintiff failed to name and sue the proper parties in his original Complaint. Additionally, Defendants have moved for summary judgment as to the following claims: (1) Plaintiff's non-selection as a Dual Rate Foreman; (2) Plaintiff's non-selection as a FMT-III in March of 2004; (3) Plaintiff's inclusion in the June 2004 RIF; (4) Plaintiff's request for compensatory damages and a jury trial; and (5) Plaintiff's state law causes of action under the Tennessee Human Rights Act. [Doc. 35]. Each of these issues will be addressed in order.

### A.      Improper Parties

Defendants claimed that Plaintiff failed to sue the proper defendant – the TVA Board of Directors in their individual capacities. [Doc. 35]. Defendants have since conceded that this issue is moot because Plaintiff filed an Amended Complaint, naming the proper parties. [Doc. 48]. Accordingly, Defendants' Motion for Summary Judgment based on improper parties is **DENIED as moot**.

### B.      Dual Rate Foreman Position

Plaintiff alleged, in his Amended Complaint, that Defendants had violated the Civil Rights Act of 1964, as codified at 42 United States Code Section 2000-e by not appointing Plaintiff

to a Dual Rate Foreman position. [Doc. 31]. In their pleadings, Defendants noted that this claim had been withdrawn [Doc. 48], and Plaintiff conceded withdrawal of this claim [Doc. 40]. At the hearing, both parties represented that the federal and state claims surrounding Plaintiff's non-appointment to the Dual Rate Foreman Position have been conceded by Plaintiff. Finding that Plaintiff does not object to Defendants' Motion for Summary Judgment [Doc. 35] as to the Dual Rate Foreman claim, Defendants' Motion for Summary Judgment is **GRANTED** as to that claim. Accordingly, Plaintiff's claim arising out of his non-appointment to the Dual Rate Foreman Position is **DISMISSED** with prejudice.

**C.    Non-Selection for FMT, Level III in March of 2004**

Plaintiff alleged, in his Amended Complaint, that Defendants had violated the Civil Rights Act of 1964, as codified at 42 United States Code Section 2000-e by not selecting him for a FMT-III position in March of 2004. [Doc. 31]. As to Plaintiff's non-selection in March 2004 for a FMT-III position, Defendants argue it was time-barred by the forty-five day administrative time limit. Plaintiff responded that it was not time barred because Defendants granted Plaintiff an extension. Defendants then asserted that Plaintiff was only granted an extension because he informed their administrators that he had only recently learned of test results which indicated that the position was not made on an objective, non-racially motivated basis. Further, Defendants state that Plaintiff later admitted no test was administered in 2004 for the position, to which Plaintiff stated that he was referring to the previous tests given in 2003. Additionally, Defendants claim that Dobbins never exhausted the administrative process, barring this claim.

Whether the extension was properly given to Plaintiff revolves around whether Plaintiff's reasons for seeking an extension had merit. This is a factual dispute. On summary

judgment, the Court must draw all inferences in favor of the non-movant and not resolve factual disputes. Anderson, 477 U.S. at 255. Accordingly, at this juncture the Court must resolve this issue in favor of Plaintiff and assume that it was timely filed.

On August 23, 2004, Plaintiff's complaint of discrimination regarding his March 2004 non-selection to a FMT-III position was accepted for investigation. [Doc. 7-2]. Although the TVA EO Compliance Director noted that the initial complaint was filed outside of the time limits, the Director determined sufficient grounds existed to allow for a waiver. Subsequent to that waiver and the investigation, Plaintiff was asked whether he wished to have a hearing before an EEOC administrative judge or have TVA's Director of Equal Opportunity issue a final agency decision. [Doc. 15-3]. Plaintiff did not file a response to this request. Instead, Plaintiff filed suit in this Court on February 4, 2005. [Doc. 1]. Because Plaintiff filed this lawsuit, TVA dismissed his administrative complaint in its entirety as a final agency decision. [Doc. 15-3]. In its dismissal, TVA noted, "in lieu of an appeal to the Commission, you may file a civil action in an appropriate U.S. District Court WITHIN 90 CALENDAR DAYS of your receipt of this letter." [Doc. 15-3 (emphasis in original)].

Generally, in order to bring a Title VII action in federal court a plaintiff must first file a timely charge of employment discrimination with the EEOC and next obtain a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); Puckett v. Tenn. Eastman Co., 889 F.2d 1481, 1486 (6th Cir. 1989). "Dismissal without prejudice is generally the appropriate remedy for a Title VII claim filed prematurely before administrative remedies are exhausted and a right-to-sue letter secured." McCarthy v. First American Title Ins. Co., No. 1:05-CV-409, 2006 U.S. Dist. LEXIS 25082, 2006 WL 1207995, *5 (W.D. Mich. May 1, 2006). However, the Sixth Circuit has held that

failure to obtain a right-to-sue letter is not a jurisdictional defect; instead a right-to-sue letter is simply a condition precedent. See Rivers v. Barberton Bd. of Educ., 143 F.3d 1029, 1032 (6th Cir.1998) (holding a right-to-sue letter is nonjurisdictional). The Sixth Circuit has further held that, when there has been no prejudice to the defendant, any defect caused by a plaintiff's premature filing of a civil rights action is cured once the plaintiff receives a right-to-sue letter. Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 310 (6th Cir. 2000) (citing Portis v. Ohio, 141 F.3d 632, 634 (6th Cir. 1998)). As in Parry and Portis, the Court finds that Defendants were not prejudiced by Plaintiff's premature filing, and any defect in Plaintiff's complaint was cured once Plaintiff received his right-to-sue letter. Accordingly, Defendants' motion for summary judgment is **DENIED** as to Plaintiff's claim of discrimination in his non-selection to a FMT-III position in March of 2004.

### D.     June 2004 Reduction in Force

Plaintiff alleged, in his Amended Complaint, that Defendants had violated the Civil Rights Act of 1964, as codified at 42 United States Code Section 2000-e by eliminating his position through a reduction in force in June of 2004. Prior to bringing this suit, Plaintiff instituted an appeal to the MSPB regarding the proprietary of his inclusion in the RIF.

Unless a case involves allegations of discrimination, all actions for review of a MSPB decision must be appealed to the United States Court of Appeals for the Federal Circuit. 5 U.S.C.A. § 7703(b)(1); Pletten v. Merit Systems Prot. Bd., 908 F.2d 973, 1990 WL 97491, at *3 (6th Cir. July 13, 1990) (unpublished). So-called "mixed cases," those involving claims of both discrimination and an improper agency action must be brought in a United States District Court. 5 U.S.C.A. §§ 7702(a)(1), 7703(b)(2); Ballard v. Tenn. Valley Authority, 768 F.2d 756, 757 (6th Cir. 1985);

Pletten, 908 F.2d 973, 1990 WL 97491, at *3 (citing Williams v. Dept. of the Navy, 715 F.2d 1485 (Fed. Cit. 1985) (en banc)).  Whether the case is a mixed case, appealable to a District Court, or not a mixed case, appealable to the Federal Court of Appeals, D.C. Circuit, is a jurisdictional matter. Vauls v. Veterans Admin., 693 F.2d 232, 233 (D.C. Cir. 1982) (per curiam).  If the appellate court is not the proper court for that type of case then the action must be dismissed.  Id.

On his MSPB appeal form, Plaintiff wrote that he thought the agency was wrong in subjecting him to a RIF because "the GBM was only to be eliminated by attrition[.]  I was discrimination against for reclassification reason.  And I was discrimination against for filing complaint." [Doc. 54-2, (sic throughout)].  Plaintiff asserted that the proper remedy would be reinstatement as a TVA employee with retroactive pay.  [Doc. 54-2].  As to the other claims, Plaintiff checked every box, including a claim that: the agency made errors in applying required procedures; the agency's actions were the result of prohibited discrimination; the agency's actions were based on whistle[-]blowing; the agency violated his rights under the Uniformed Service Employment or Re[-]employment Rights Act; and the agency violated a law or regulation relating to veteran's preference.  [Id.] Thus, the claim was initially a mixed case, though any reference to discrimination was vague at best.

However, Plaintiff later abandoned even those cursory allegations of discrimination, instead relying solely on his claim that the agency made errors in applying required procedures. [Doc. 56-15].  In Plaintiff's Pre-Hearing Submissions, which were submitted by his attorney at the time, Margaret Held, to the MSPB, Plaintiff alleged two improper bases for TVA's actions: (1) that the MOU was breached with the RIF, and (2) GBMs should have been in the same classification as FMTs, which would have eliminated GBMs from RIF selection.  [Id.].  At no point in his Pre-

Hearing Submissions did Defendant even remotely allege a claim of race-based decision-making or discrimination.  [Id.].  The Court notes that the MSPB's Order and Notice of Hearing required the parties to submit Pre-Hearing Submissions, including a statement of facts and issues and any and all defenses. [Doc. 54-4].  Accordingly, Plaintiff had to include any and all claims in his pre-hearing submissions.   The pre-hearing submissions are markedly void of any mention of racial discrimination.  Additionally, the ALJ specifically wrote "the appellant's only challenge to the application of the RIF regulations concerns his competitive level," indicating an absence of any argument of discrimination.  [Doc. 54-5].  Later, the ALJ also found that the MOU did not contractually bind TVA to maintain Plaintiff's employment.  [Id.].

As noted above, if the case before the MSPB raises no discrimination issues, then any judicial review must be sought in the United States Court of Appeals for the Federal Circuit.  Ballard, 768 F.2d at 757 n.1 (citing 5 U.S.C.A. § 7703(b)(1)).  Based upon the Pre-Hearing Submissions and the Order of the ALJ, the Court finds that Plaintiff effectively abandoned any claims of discrimination before the MSPB before the October 28, 2004, hearing.  Thus, Plaintiff's claim ceased to be a mixed claim, meaning Plaintiff's current claims regarding his inclusion in the June 2004 RIF are pending before the wrong court.  **This Court lacks jurisdiction of this issue.**  Without jurisdiction, the Court cannot addresses the merits of this claim. Accordingly, Defendant's motion for summary judgment is **GRANTED** with respect to Plaintiff's claims regarding the June 2004 reduction in force and the same are  **DISMISSED with prejudice**.

### E.    Compensatory Damages and Jury Trial

Defendants, in their motion for summary judgment, asserted that a Plaintiff only has a right to a jury trial if he is entitled to compensatory damages.  [Doc. 14-1].  Further, Defendants

assert that this specific Plaintiff has no right to compensatory damages. Therefore, he is not entitled to a jury trial. In response, Plaintiff asserted that he is entitled to compensatory damages, and is, therefore, entitled to a jury trial. [Doc. 40].

At the hearing, Defendants argued that Plaintiff's claim for compensatory damages fails because it was never asserted during the administrative process. Plaintiff responded by arguing that Defendants had an affirmative duty to raise the issue themselves, and they did not. Plaintiff agreed that Defendants were correct in their assertion that the right to a jury trial rests on whether compensatory damages are at issue.

The Court finds that the parties and the law are in agreement; no right to jury trial exists under 42 United States Code Section 1981a unless the plaintiff has raised the issue of compensatory damages. Section 1981a provides that "if a complaining party seeks compensatory or punitive damages under this section – any part may demand a trial by jury. . . ." 42 U.S.C.A. § (c)(1); see also West v. Gibson, 527 U.S. 212, 221 (1999) (tracing the section's history and noting that a party is entitled to a jury's determination of compensatory damages); Davis v. Therm-O-Disc, Inc., 791 F. Supp. 693, 700 (N.D. Ohio 1992) (holding that the Civil Rights Act limits the right to a jury trial to those who seek compensatory and punitive damages). Therefore, the crucial question is whether Plaintiff has sought compensatory or punitive damages under Section 1981a.

Compensatory damages, under Section 1981a, do not include "[b]ackpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e-5(g)]."[7] Id. at (b)(2) (alterations in original); see also Lutz v. Glendale Union High School, 403 F.3d 1061, 1068 (9th Cir. 2005) (holding that back pay is excluded from potential

_____

[7]The relief available under 42 U.S.C.A. Section 2000e-5(g) includes: injunctions, appropriate affirmative action, equitable relief, accrual of back pay, reduction of back pay, and limitations on judicial orders.

compensatory damages under Section 1981a); <u>Hennessy v. Penril Datacomm Networks, Inc.</u>, 69 F.3d 1344, 1352 (7th Cir. 1995) (holding the same). Therefore, to receive a jury trial, a complainant must demand compensatory damages which comport with those authorized under Title VII and Section 1981a; the complainant must assert "[a] claim for future pecuniary loss (excluding front pay), emotional pain or suffering, inconvenience, mental anguish, loss of enjoyment of life, or other similar nonpecuniary losses." <u>Seay v. Tenn. Valley Auth.</u>, 340 F. Supp. 2d 844, 848 (E.D. Tenn. 2004); <u>Oden v. Oktibbeha County</u>, 246 F.3d 458, 470 (5th Cir. 2001) (holding that Section 1981a allows juries to award compensatory damages based on mental anguish and suffering).

Plaintiff rightfully asserts that he "[s]pecifically asked for compensatory damages in his Complaint." [Doc. 40]. Indeed, in his Amended Complaint [Doc. 31],[8] Plaintiff avers that "for these acts, TVA is liable to Mr. Dobbins for back-pay, reinstatement or in the alternative front-pay, compensatory damages. . . ." Front pay, which is a remedy in lieu of reinstatement, and compensatory damages are issues of fact that must be decided by a jury. <u>Seay</u>, 340 F. Supp. 2d at 847 (citing <u>Hudson v. Reno</u>, 130 F.3d 1193, 1203-04 (6th Cir. 1997)). Thus, Plaintiff has sought compensatory relief in this Court.

Defendants assert that Plaintiff failed to present his compensatory damages claims at the administrative level, resulting in Plaintiff's failure to exhaust his administrative remedies, barring his present claim for compensatory damages. Defendants are correct in their assertion that Plaintiff must exhaust his administrative remedies. <u>Seay</u>, 340 F. Supp. 2d at 848 (citing <u>Brown</u>, 425 U.S. at 832). However, claims do not have to be plead with specificity at the administrative level. Where facts related to the claim would prompt the administrative agency to investigate whether an

---

[8]Plaintiff has argued compensatory damages and demanded a jury trial from the outset. [<u>See</u> Doc. 1].

uncharged claim occurred, the plaintiff is not precluded from bringing suit on that claim in federal district court. <u>Seay</u>, 340 F. Supp. 2d at 849.

      A recent case from this District has explored this issue and held:

> The Court has reviewed the record to determine whether [Plaintiff] raised claims for compensatory damages at the administrative level. . . .  The Court finds that [Plaintiff] did not explicitly make a demand for relief in the form of compensatory damages in his EEOC charges pertaining to Counts 75 and 129. The EEOC complaint forms did not ask or require [Plaintiff] to specify the particular remedies or forms of relief that he was demanding. The EEOC complaint forms did not ask any questions about whether [Plaintiff] was asserting a claim for compensatory damages based on emotional distress, emotional pain and suffering, or mental anguish due to race discrimination. Moreover, there is nothing in the EEOC complaint forms and accompanying instructions advising or notifying [Plaintiff] that unless he explicitly asserted a claim for emotional or mental injury and demanded compensatory damages under Title VII, he would not be entitled to a jury trial later in federal district court pursuant to 42 U.S.C. § 1981a.  Although this is not dispositive, it helps explain why [Plaintiff] did not make an explicit demand for compensatory damages in his EEOC charges.
>
> . . . . .
>
> Count 75 poses a more difficult problem. With regard to Count 75, the underlying EEOC charge filed by [Plaintiff] did not contain any factual allegations that he had suffered emotional distress or mental anguish as a result of race discrimination. There is no reported Sixth Circuit caselaw directly on point that addresses this unusual situation where [Plaintiff] made an EEOC charge of race discrimination but the EEOC charge (underlying Count 75) did not allege that the race discrimination caused [Plaintiff] to suffer the injury of emotional distress and did not demand compensatory damages.
>
> In <u>Fitzgerald</u>, 121 F.3d [203,] 208-209 [(5th Cir. 1997)], the Fifth Circuit indicates that it would require a Title VII plaintiff in a position similar to [Plaintiff] to exhaust his administrative remedy by alleging particular facts in the EEOC charge demonstrating that he claims to have suffered an emotional or mental injury that might warrant an award of compensatory damages. The Sixth Circuit has not adopted the rationale and legal analysis in <u>Fitzgerald</u>.  This Court will not follow and apply the <u>Fitzgerald</u> rationale in [Plaintiff]'s case.

In the absence of Sixth Circuit precedent directly on point, the Court broadly construes the pro se EEOC charge underlying Count 75. The Court will not construe the EEOC charge in a narrow, hyper-technical manner to preclude [Plaintiff] from claiming compensatory damages as a remedy and form of relief with regard to Count 75. [Plaintiff]'s claim for compensatory damages under Count 75 generally falls within the scope of the EEOC investigation reasonably expected to grow out of the EEOC charge. It is objectively reasonable to expect that a comprehensive investigation by EEOC of [Plaintiff]'s charge would have at least explored the issue whether the charged race discrimination caused [Plaintiff] to suffer emotional distress which would support a claim for compensatory damages. Under the scope of the investigation test, the injury of emotional distress and the possible need to award compensatory damages to remedy that injury naturally grows out of the substantive EEOC charge of intentional race discrimination.

This is not a case where [Plaintiff] claimed one type of Title VII discrimination (e.g. race discrimination) in his EEOC charges, and then later filed suit in federal district court asserting a entirely different Title VII claim based on another kind of discrimination (e.g. sex discrimination). [Plaintiff] filed EEOC charges alleging race discrimination. Count[] 75. . . [is] based on the same EEOC charges of race discrimination. . . . The scope of the EEOC investigation reasonably expected to grow out of the EEOC charges would necessarily include and involve consideration of the injuries that [Plaintiff] suffered as a result of the race discrimination and the forms of relief needed to remedy those injuries. Once the EEOC charge of race discrimination is made, it is reasonable to expect that the EEOC investigation would explore and focus on determining: (1) the particular injuries, if any, caused by the charged race discrimination; and (2) appropriate relief to redress the injuries.

Seay, 340 F. Supp. 2d at 849-851. This Court finds Chief Judge Edgar's opinion well-reasoned and adopts it in whole.

Though Defendants are correct in noting that, at times, Plaintiff was represented by counsel in the administrative process, he was not represented by counsel at each and every stage of each and every complaint that is at issue in the present litigation. Accordingly, this Court finds that Plaintiff is not precluded from claiming compensatory damages in this case, even though such

damages were not specifically alleged previously.

In making this determination the Court notes that with a motion for summary judgment, the burden is on the movant. Employers Ins. of Wasau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). In this instance, the movants are Defendants. Defendants have not carried their burden of proving that the law forbids a compensatory damages claim in instances such as this. Accordingly, Plaintiff may claim compensatory damages. As such, Plaintiff is entitled to the jury trial he has demanded from the beginning. Defendants' motion for summary judgment on Plaintiff's compensatory damages claims is hereby **DENIED**.

F.    **State Law Claims**

Plaintiff alleged, in his Amended Complaint, that Defendants had violated the Tennessee Human Rights Act by the conduct at issue in this matter. [Doc. 31]. In their pleadings, Defendants noted that this claim had been withdrawn [Doc. 48], and Plaintiff conceded withdrawal of this claim [Doc. 40]. At the hearing, both parties agreed that the state law claims, grounded in the Tennessee Human Rights Act, have been conceded by Plaintiff. Finding that Plaintiff does not object to Defendants' Motion for Summary Judgment [Doc. 35] as to the state law claims, Defendants' Motion for Summary Judgment is **GRANTED** as to those claims. Accordingly, Plaintiff's claims arising out of alleged violations of the Tennessee Human Rights Act are **DISMISSED** with prejudice.

G.    **Non-Selection for FMT, Level III in 2003**

This issue, though contained in Plaintiff's Amended Complaint, was not addressed in Defendants' Motion for Summary Judgment [Doc. 35], which has, accordingly, been deemed a motion for partial summary judgment. Therefore, this issue is not presently under consideration.

**H.** **Summary**

In sum, many of these claims were capable of resolution on the law. The remaining claims were either not addressed in Defendants' motion for summary or judgment or involve genuine issues of material fact. As such, they are factual determinations for the trier of fact. Accordingly, Defendants' Motion for Partial Summary Judgment [Doc. 35] is **GRANTED in part and DENIED in part**, as determined within the body of this Memorandum and Order.

**IV.** **CONCLUSION**

Accordingly, it is ordered that:

(1) TVA's Motion for Summary Judgment [Doc. 35] is **GRANTED in part and DENIED in part, as outlined fully herein**;

(2) The Pretrial Conference will occur on **October 29, 2007 at 10:00 a.m.** before the undersigned; and

(3) The **Jury Trial** will commence on **November 13, 2007, at 9:00 a.m.** before the undersigned.

**IT IS SO ORDERED.**

**ENTER:**

___s/ C. Clifford Shirley, Jr.___
United States Magistrate Judge