# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| ANTHONY DOBBINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:05-CV-78 |
| ) | (Shirley) |
| TENNESSEE VALLEY AUTHORITY, ) | |
| WILLIAM B. SANSOM, BILL BAXTER, ) | |
| DENNIS BOTTORFF, DON DePRIEST, ) | |
| ROBERT M. DUNCAN, SKILA HARRIS, ) | |
| HOWARD THRAILKILL, and ) | |
| SUSAN RICHARDSON WILLIAMS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment. [Doc. 52]. On August 13, 2007, the parties appeared before the Court for a motion hearing on Defendants'[1] Second Motion for Partial Summary Judgment. [Doc. 61] Attorney John Slater appeared on behalf of Defendants. Attorney Linda G. Welch appeared representing Plaintiff Anthony Dobbins ("Plaintiff"). At the conclusion of the hearing the Court took the matter under advisement and it is now ripe for adjudication.

In their second motion for summary judgment, Defendants challenge the merits of Plaintiff's claim that he was subjected to race discrimination and reprisal when he was not selected

---

[1] Defendants include the Tennessee Valley Authority and individuals, who are collectively represented by the same counsel. The Tennessee Valley Authority ("TVA") is the lead defendant, and defendants will be collectively referred to as "Defendants."

for a Level III Facilities Management Technician position (the "Position") in January, 2003. This claim was not challenged on its merits in Defendants' first motion for summary judgment. [Doc. 35] Defendants contend that Plaintiff cannot establish a prima facie case of discrimination, nor of retaliation. Defendants further argue that even if Plaintiff could establish a prima facie case, they have presented a legitimate, non-discriminatory reason in support of their hiring decision, that Plaintiff did not score as highly during the selection process as the selected candidates. Plaintiff opposes the motion, arguing that the motion is untimely and that he has established a prima facie case of discrimination and retaliation. Plaintiff further argues that he has presented sufficient evidence to show that Defendants' alleged legitimate, non-discriminatory reason in support of their decision is merely a pretext for discrimination.

**I.     Relevant Facts**

As the Court is required to do in reviewing a motion for summary judgment, all facts will be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Plaintiff, an African-American male, was employed by TVA from 1977 to 2004. [Doc. 31 at ¶¶ 6, 43] Plaintiff held various positions during his employment with TVA, but beginning in 1995, and for all times relevant to this action, he worked as a General Building Mechanic ("GBM"). [Id. at ¶ 7] Plaintiff was the only African-American GBM in TVA's Facilities Services department in Knoxville, and one of only two African-American employees in TVA's entire Facilities Management division. [Id. at ¶ 8] No African-American has ever been hired in the Position in Knoxville. [Doc. 67, Exhibit 2 at 16, Exhibit 3 at 6] Plaintiff worked for seven years as the sole pipefitter on his shift before applying for the Position. [Doc. 31 at ¶ 10; Doc. 67, Exhibit

2

4 at 13] Prior to applying for the Position, Plaintiff had filed several EEOC complaints concerning his employment with TVA, including, but not limited to: inability to work on the day shift when he had seniority; difficulty in participating in journeyman training because others refused to attend class with Plaintiff; and difficulty in receiving training from co-workers. [Doc. 67, Exhibit 6 at ¶¶ 5-7] Defendants admit that Plaintiff's TVA personnel file contained no negative service reviews or reprimands. [Doc. 7 at ¶ 9]

On August 5, 2002, TVA and the Trades and Labor Council, which represented the union Plaintiff belonged to, entered into a Memorandum of Understanding ("MOU") concerning the reclassification of trades and labor positions. [Doc. 67, Exhibit 7] The MOU indicated that some employees would not be selected for the new classifications and that union ratios would be attained as employees "attritioned." [Id.] In conjunction with the MOU, TVA restructured its trades and labor workforce into three classifications: Property Maintenance Worker (Level I), General Maintenance Worker (Level II), and Facilities Maintenance Technician (Level III). [Doc. 62-15 at ¶ 4] These positions were to be filled from the existing Facilities Management workforce, with "existing Laborers," being reclassified into Level I, while the Level II and Level III positions were posted for competition. [Doc. 62-16 at ¶ 5] Selection for a Level III position would result in a five percent raise in pay. [Doc. 62-2 at 27]

A three-part selection process, consisting of a written test, an interview, and a management assessment, was designed for filling the Level II and Level III positions. [Doc. 62-16 at ¶ 6] The written test consisted of fifty questions, worth two points each, for a maximum possible test score of 100. [Id.] The interview consisted of ten questions, worth a maximum of ten points each, for a maximum possible interview score of 100. [Id.] To ensure impartiality, the interviews

were to be conducted by four individuals from outside the applicant's region, with the same group of interviewers interviewing all of the applicants in that region. [Doc. 62-18 at 27; Doc. 67, Exhibit 2 at 8] Each interviewer would score each applicant independently, then the interviewers were to discuss each applicant and could change the score they had given the applicant based upon the consensus of the interviewers. [Doc. 67, Exhibit 12 at 7-11] Each candidate's total interview score was determined by averaging the scores given by each of the four interviewers. [Doc. 63 at 4]

The management assessment was performed by the candidate's regional manager and evaluated nine areas: dependability; attitude; planning and organization skills; commitment to customer focus; certifications; flexibility; support for safety and environmental goals; work ethic; and technical performance. [Id.] The first eight subjects of the assessment were worth a maximum of ten points each, while the area of technical performance was worth a maximum of twenty points, for a maximum possible assessment score of 100. [Id.] Each of the three parts received equal weight, thus, each candidate received a final numerical score equal to the sum of the candidate's scores on the written test, the interview, and the management assessment. [Id.] The candidates with the highest scores were to be selected for the competed positions. [Doc. 62-3 at 31]

Plaintiff applied for the Position in TVA's Facilities Service Division in Knoxville in January, 2003, but was denied.[2] [Doc. 31 at ¶ 34] During the January, 2003, selection process, a total of ten applicants, including Plaintiff, competed for five openings in the Position. [Doc. 62-16 at ¶ 7] The four interviewers for this process were: James Knowles, J.R. Watson, David Thompson, and Ronnie Nanney. [Doc. 62-3 at 37] Mr. Watson was from the Knoxville region, but from a

---

[2]Plaintiff was also denied a similar position in March, 2004, but selection process is not at issue in the instant motion.

different division of that region. [Id.] Mr. Watson was not originally selected to be on the interview panel, but was chosen to replace Jeff Butler, who was from outside the East area, because Mr. Butler had an illness in his family. [Id.; Doc. 62-14 at 7] Before the interviews were conducted, Mr. Watson met with Karen Henry and Danny Shropshire regarding the selection process. [Doc. 67, Exhibit 12 at 4]

The management assessments at issue were performed by Mr. Shropshire, the East area Operations and Maintenance manager. [Doc. 62-18 at 4, 27] Mr. Shropshire did not directly supervise Plaintiff, but Plaintiff's supervisors reported to Mr. Shropshire. [Id. at 5] Mr. Shropshire was also responsible for approving the yearly evaluations of Plaintiff performed by Plaintiff's supervisors. [Id. at 9] Mr. Shropshire would not have allowed Plaintiff to stay on a shift by himself for years unless he was qualified to perform the job. [Id. at 28] Prior to the selection process, Mr. Shropshire assumed Plaintiff could perform the job safely without any assistance. [Id.] There is no documentation indicating that Plaintiff made frequent mistakes. [Id. at 29]

There is no formal documentation of customer complaints concerning Plaintiff's work. [Id. at 11] However, in May, 2002, Mr. Shropshire did ask Mr. Register, one of Plaintiff's co-workers and one of the individuals selected for the Position, to provide Mr. Shropshire with a written report describing problems Mr. Register had noticed with Plaintiff's work. [Id. at 22-23; Doc. 67, Exhibit 17 at 3] Mr. Shropshire stated that he was not directing Mr. Register to report on Plaintiff, but that Mr. Register was "checking up" on Plaintiffs work. [Doc. 62-18, at 22-23] At the time of the "checking up," Mr. Shropshire was aware that Mr. Register and Plaintiff had previously had difficulties. [Id. at 22] Mr. Register had previously had problems with Plaintiff because of Plaintiff's "jive talk," which Mr. Register associated with African-Americans and found offensive,

5

bur Mr. Shropshire was unaware of these problems. [Id.; Doc. 67, Exhibit 11 at 11-15] Mr. Shropshire also asked Mr. Frost, another of Plaintiff's co-workers, to document comments Mr. Frost had made regarding Plaintiff's work, but Mr. Frost refused. [Doc. 62-18 at 26]

Mr. Shropshire agreed that other TVA employees made mistakes and that sometimes someone other than the original worker had to correct those mistakes. [Id. at 29] Mr. Shropshire did not rely on any of the applicants' prior performance evaluations when performing the management assessment during the selection process. [Id. at 30] Mr. Shropshire was aware that Plaintiff had filed EEOC complaints prior to the selection process. [Id. at 29]

David Campbell, a foreman who supervised Plaintiff, stated that, as early as 1995, Mr. Shropshire asked Mr. Campbell to "document events on [Plaintiff] which would aid in [Plaintiff's] dismissal," but Mr. Campbell refused. [Doc. 67, Exhibit 16 at ¶ 3] Mr. Campbell further stated that Jim Miller, another foreman, "told [Mr. Campbell] on numerous occasions neither he nor his crew wanted to work with [Plaintiff]," and that Mr. Miller said to Mr. Campbell that "I've got to get rid of him." [Id. at ¶ 4] Mr. Campbell said that Mr. Miller referred to Plaintiff as a "nigger" during the conversation. [Id.] Mr. Campbell also stated that in 1995 Fate Evans, one of Plaintiff's co-workers and one of the individuals selected for the Position, was supposed to train Plaintiff, but refused, saying "I ain't working with a stinking nigger." [Id. at ¶ 8] Mr. Campbell also stated that, based upon his supervision of Plaintiff, Plaintiff was a good worker. [Id. at ¶ 9]

With respect to the testing process, the ten applicants, ranked according to total score, received the following scores:

6

| Rank | Applicant | Mgmt. Assessment | Written Test[3] | Interview | Total Score |
|---|---|---|---|---|---|
| 1* | Register | 78.5 | 52 | 82.25 | 212.75 |
| 2* | Newsome | 66 | 62 | 78 | 206 |
| 3* | Ketron | 74.5 | 46 | 79.5 | 200 |
| 4* | Evans | 74.5 | 42 | 79.5 | 196 |
| 5* | Turpin[4] | 74 | 36 | 85.25 | 195.25 |
| 6 | Garrett | 55.5 | 48 | 70 | 173.5 |
| 7 | Seivers | 51.5 | 44 | 67.5 | 163 |
| 8 | Dobbins (Plaintiff) | 51.5 | 42 | 64.5 | 158 |
| 9 | Perkins | 73.5 | 34 | 48.25 | 155.75 |
| 10 | Frost | 38 | 38 | 68 | 144 |
|  | Average Scores | 63.75 | 44.4 | 72.275 | 180.425 |

* indicates applicant selected for one of the five open Positions

[Doc. 62-3 at 38; Doc. 62-13 at 30-47; Doc. 62-15 at ¶ 9; Doc. 80-3]  Based upon these results, Plaintiff ranked eighth overall, tied for eighth in the management assessment, tied for sixth in the written test, and ranked ninth in the interview.

---

[3]The Court notes that, based upon the test cover sheets [Doc. 62-13 at 39-47], which indicate the number of questions the applicant answered correctly, compared with the final scores of all of the applicants [Doc. 62-3 at 38], and the statements of as to the test scores achieved by various applicants [Doc. 62-15 at ¶¶ 8-9], it appears that each applicant was given credit for one additional question than the applicant actually answered correctly.  The Court assumes that one of the questions on the test was faulty and was thrown out, resulting in an across the board two point increase in each applicant's score.

[4]The Court notes that the test cover sheet and management assessment of Mr. Turpin do not appear to be in evidence.  The scores indicated are based upon the statement of Ms. Wright. [Doc. 62-15 at ¶ 9]

## II. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Burchett v. Kiefer, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Id. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

### III. Analysis

Defendants contend that Plaintiff cannot establish a prima facie case of discrimination, nor of retaliation. Defendants further argue that even if Plaintiff could establish a prima facie case, they have presented a legitimate, non-discriminatory reason in support of their hiring decision, that Plaintiff did not score as highly during the selection process as the selected candidates. Plaintiff opposes the motion, arguing that the motion is untimely and that he has established a prima facie case of discrimination and retaliation. Plaintiff further argues that he has presented sufficient evidence to show that Defendants' alleged legitimate, non-discriminatory reason in support of their decision is merely a pretext for discrimination. The Court will address each of these issues in turn.

#### A. Timeliness

Plaintiff contends that Defendants' motion is untimely. Specifically, Plaintiff contends that dispositive motions were due on March 16, 2007, and thus the instant motion, filed May 29, 2007, is untimely. The Court notes that on February 16, 2007, the Court entered a scheduling order requiring all dispositive motions to be filed at least ninety days before trial. [Doc. 57] At the time the instant motion was filed, trial was scheduled for August 28, 2007. As such, this dispositive motion was filed one day before the deadline of May 30, 2007. The Court also notes that while it ordered that any supplements to Defendants' first motion for summary judgment be filed on or before March 16, 2007 [Doc. 58], Defendants' first motion did not challenge the merits of Plaintiff's claim based on the January, 2003, selection. Accordingly, the Court finds that it was appropriate for Defendants to raise the issue in a new motion rather than attempting to raise the issue for the first time in a supplement to the first motion for summary judgment. Thus, the Court finds

9

Defendants' motion to be timely.

B. **Claim of Racial Discrimination**

Plaintiff alleges that the defendants discriminated against him on the basis of his race in violation of the Civil Rights Act of 1964, as codified at 42 United States Code Section 2000-e. Originally, Plaintiff also alleged a violation of the Tennessee Human Rights Act, but that claim has since been dismissed. [Doc. 82]

A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination. See Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). In the instant case, Plaintiff has presented no direct evidence of discrimination, so the Court will proceed with its analysis under a theory of circumstantial evidence.

In analyzing the burdens associated with a claim of discrimination supported by circumstantial evidence of discrimination, the Sixth Circuit has held that:

> Under the circumstantial evidence approach, the familiar McDonnell Douglas-Burdine tripartite test is employed. This paradigm requires the plaintiff to establish a prima facie case of discrimination. To establish a prima facie case of discrimination, a plaintiff must show that 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." If the defendant carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination. The plaintiff may establish that the proffered reason was a mere pretext by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to

10

explain the defendant's action. "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."

Johnson v. University of Cincinnati, 215 F.3d 561, 572-73 (6th Cir. 2000) (citations omitted).

Thus, in order to present a prima facie case of racial discrimination, Plaintiff must establish that: 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was treated less favorably than a similarly situated individual outside his protected class. Johnson, 215 F.3d at 572-73. Plaintiff has established the first three elements, as Plaintiff is an African-American, Plaintiff was qualified for his job and performed it satisfactorily, and Plaintiff did suffer an adverse employment action when he was not selected for the Position and was later terminated in conjunction with a reduction in force notice. However, Defendants contend that Plaintiff cannot establish the fourth element, that Plaintiff was treated less favorably than a similarly situated individual outside his protected class.

In analyzing the fourth prong of the McDonnell Douglas prima facie case in a failure to promote case, the Sixth Circuit has held that:

> In his attempt to establish a prima facie case by showing that [the defendant] promoted other employees who were at most as qualified as he was but who did not belong to a protected class, [the plaintiff] proffers the performance evaluations of six white employees who were promoted to Assistant Store Director or Director sometime in the past five years. See Brown v. Tennessee, 693 F.2d 600, 603 (6th Cir. 1982) (citing McDonnell Douglas, 411 U.S. at 802). Although these employees appear to have served in positions similar to that occupied by [the plaintiff], these employees did not work in [the plaintiff's] geographic region, were not subject to the same standards of performance as [the plaintiff] (the duties of different types of managers -- i.e. Storeroom vs. Front-End -- differ somewhat), and were not reviewed by the same supervisors, factors required to establish a prima facie case of race discrimination under Mitchell and

11

Ercegovich.

Evans v. Toys R Us Ohio, Inc., No. 99-3233, 2000 U.S. App. LEXIS 14076, at *30 (6th Cir. 2000).

The Sixth Circuit has also warned that:

> It may be worth noting that opinions of this Court have cautioned against conflating the fourth prong of the prima facie case -- comparison to similarly situated individuals -- with the subsequent inquiry regarding whether the employer's proffered justification for the adverse job action is pretextual. See White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 242 (6th Cir. 2005) ([W]e are mindful of the fact that prior Sixth Circuit case law warns against conflating the first (prima facie case) and second (articulation of a legitimate non-discriminatory reason) steps in the McDonnell-Douglas analysis."); see also id. at 247 (Moore, J., concurring) (arguing that the panel majority's analysis in fact conflated the two steps, and that the plaintiff had made out a prima facie case). This concern is based on the fact that the prima facie case is "not onerous" and is usually "easily met." Cline v. Catholic Diocese, 206 F.3d 651, 660 (6th Cir. 1999). It would seem that this concern is particularly relevant in cases where an employment decision is based on the relevant qualifications of different employees. See, e.g., White, 429 F.3d at 242. Thus, where qualifications are roughly similar, an employer's decision to select a given employee based on her qualifications might be a legitimate, non-discriminatory, non-pretextual basis from the challenged decision, but it would not automatically defeat the plaintiff's prima facie case.

Elgabi v. Toledo Area Reg'l Transit Auth., 228 Fed. App'x. 537, 541 (6th Cir. 2007).

With this jurisprudence in mind, the Court turns to the facts of the instant case. Considering the factors examined by the Elgabi court, the Court finds that: Plaintiff was employed in a position similar to the selectees; Plaintiff and the selectees all worked in the Knoxville region; both Plaintiff and the selectees shared a similar supervisor, in that the direct supervisor of each of the Selectees reported to Mr. Shropshire, who had the ultimate responsibility of evaluating and monitoring the performance of Plaintiff and the selectees; and Plaintiff and the selectees were subject to the same standards of performance. Additionally, the Court notes that on the only

12

objective portion of the selection process, the written test, Plaintiff scored higher than one of the selectees and received the same score as another selectee, thus Plaintiff's technical knowledge, as measured by the Defendants' own test, is similar to that of the selectees. Thus, the Court finds that Plaintiff was similarly situated to the selectees.

Additionally, viewing the evidence in the light most favorable to the plaintiff, there is evidence that Plaintiff was subjected to harsher scrutiny than other applicants prior to and during the selection process, thus establishing that he was treated less favorably than the selectees. Specifically, the Court notes that: Plaintiff was the sole pipefitter on his shift for several years and worked without a partner; Mr. Shropshire acknowledge that he would not have allowed an unqualified employee to work by himself on a shift for an extended period of time; and Mr. Campbell stated that Plaintiff was a good worker. Thus, viewing the evidence in the light most favorable to the plaintiff, there is evidence of record indicating that Plaintiff is a much better worker than Mr. Shropshire's management assessment might otherwise suggest. Accordingly, the Court finds that Plaintiff has established a prima facie case in this matter.

Plaintiff having established a prima facie case, "a mandatory presumption of discrimination is created and the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Johnson, 215 F.3d at 573. Defendants contend that the selection process was designed to select the most qualified candidates, with the highest scoring applicants receiving offers for the Position. Accordingly, Defendants contend that, rather than Plaintiff's race, it was Plaintiff's lower score that caused him not to be selected. The Court finds that Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's non-selection.

Next, the burden shifts again, and Plaintiff

> must prove that the proffered reason was actually a pretext to hide unlawful discrimination. The plaintiff may establish that the proffered reason was a mere pretext by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action. "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."

Johnson, 215 F.3d at 573. In discussing the issue of pretext as it relates to qualifications evidence, the Sixth Circuit has held that:

> Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination. In the case in which a plaintiff does provide other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment. See, e.g., Jenkins v. Nashville Public Radio, 106 F. App'x 991, 995 (6th Cir. 2004) (reversing lower court's grant of summary judgment; in addition to evidence of superior qualifications, the plaintiff provided evidence of "irregularities in the application and selection process," "inconsistencies in the reasons given . . . for not hiring her," and "the lack of African-American women in supervisory positions" at the company). On the other hand, in the case in which there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former. In negative terms, evidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual. This standard accords with several of our sister courts' standards, see, e.g., Jordan v. City of Gary, Ind., 396 F.3d 825, 834 (7th Cir. 2005) ("What's more, in order to establish pretext, [the plaintiff] must establish that her credentials were 'so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in

> question,' which she has failed to do." (quoting Millbrook v. IBP, Inc., 280 F.3d 1169, 1181 (7th Cir. 2002))), and is consistent with our own precedents, see, e.g., Browning v. Dep't of the Army, 436 F.3d 692, 698 (6th Cir. 2006) (explaining that "what matters" is the employer's perception of the applicant's qualifications, and noting that this court affords "great flexibility to employers when selecting management personnel") (citations omitted); Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996); Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987) ("So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates.").

Bender v. Hecht's Dep't Stores, 455 F.3d 612, 627 (6th Cir. 2006).

Plaintiff contends that Defendants' proffered reason is mere pretext, and that Defendants' decision not to select Plaintiff was actually based upon an impermissible racial animus. Turning to the facts of this case, the Court again notes the discrepancy between Mr. Shropshire's management assessment of Plaintiff and the evidence of record establishing Plaintiff as a good employee. The Court also notes that, viewing the evidence in the light most favorable to the plaintiff, there is a question of fact as to whether the interview process was unbiased or whether Mr. Watson improperly prejudiced the interview panel against Plaintiff. Additionally, the Court notes that, given the evidence suggesting difficulties between Plaintiff, Mr. Register, and Mr. Evans, there is a question of fact as to whether Plaintiff had access to the same type of training and support that the other applicants enjoyed at TVA, thus placing Plaintiff at a disadvantage with respect to the written test. The Court finds that Plaintiff has presented "other probative evidence of discrimination" and has raised questions of fact as to whether the selectees were more qualified than Plaintiff. Accordingly, the Court finds that there are questions of fact as to whether the legitimate, non-discriminatory reason presented by Defendants is pretextual, thus Defendants' motion for summary judgment [Doc. 61] is hereby **DENIED** with respect to Plaintiff's discrimination claim.

## C. Claim of Retaliation

Plaintiff alleges that Defendants retaliated against him in response to Plaintiff's EEOC complaints. The Sixth Circuit has provided the following standard for a retaliation claim:

> A plaintiff must . . .prove that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. Once the plaintiff establishes a prima facie case, the burden of production of evidence shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. The plaintiff then must demonstrate that the proffered reason was not the true reason for the employment decision.

Lindsay v. Pizza Hut, 57 F. App'x 648, 649-50 (6th Cir. 2003) (citing Morris v. Oldham County Fiscal Court, 201 F.3d 784 (6th Cir. 2000). Defendants contend that Plaintiff cannot establish the fourth element, a causal connection between protected activity and the adverse employment action.

The Court finds that Plaintiff has established the first three elements of a prima facie case of retaliation: Plaintiff engaged in protected activity by filing EEOC complaints; Plaintiff's protected activity was known to Defendants; and Plaintiff was subjected to an adverse employment action, the non-selection at issue under the instant motion. With respect to the fourth element, the Court notes that Mr. Shropshire was aware of Plaintiff's protected activity. Additionally, as the Court noted above, there is a discrepancy between the management assessment performed by Mr. Shropshire and other evidence relating Plaintiff's performance at work. Given these two factors, the Court finds that Plaintiff has produced "sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." Allen v. Mich. Dep't of Corr., 165 F.3d 405, 413 (6th Cir. 1999). Thus, the Court finds that

16

Plaintiff has established a prima facie case of retaliation.

Plaintiff having established a prima facie case of retaliation, Defendants offer the same legitimate, non-discriminatory reason offered in response to Plaintiff's discrimination claim. For the reasons discussed above in connection with Plaintiff's discrimination claim, the Court finds that Defendant has presented a legitimate, non-discriminatory reason, but that Plaintiff has raised questions of fact as to whether that legitimate, non-discriminatory reason is mere pretext. Accordingly, Defendants' motion [Doc. 61] is hereby **DENIED** with respect to Plaintiff's claim of retaliation.

### IV. Conclusion

For the reasons set forth herein, Defendants' second motion for partial summary judgment is hereby **DENIED**.

**IT IS SO ORDERED.**

**ENTER:**

  s/ C. Clifford Shirley, Jr.  
United States Magistrate Judge